KLOECKNER STEEL CORPORATION *v.* UNITED STATES [1]

United States Customs Court, Second Division

(Decided July 6, 1938)

*Strauss & Hedges* (*Howard C. Carter, Allan R. Brown*, and *William F. X. Band* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Charles J. Miville*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Tampa, Fla., brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of cooperage hoop steel imported from Cologne, Germany, via Antwerp, Belgium, and entered at the port of Pensacola, Fla., on October 28, 1935.

Duty was levied thereon at the rate of thirty-five one-hundredths of 1 cent per pound under the provision in paragraph 313 of the Tariff Act of 1930 for—

Hoop * * * steel, not specially provided for, valued at 3 cents per pound or less, eight inches or less in width, and thinner than * * * one hundred and nine one-thousandths and not thinner than thirty-eight one-thousandths of one inch.

It is claimed that said merchandise is properly entitled to a reduction in said duty of 20 per centum by virtue of the trade agreement with Cuba promulgated in T. D. 47232, 66 Treas. Dec. 189, and section 350 (a) of the Reciprocal Trade Agreement Act of June 12, 1934, 48 U. S. Stat. at Large 943.

At the hearing held before this division on December 13, 1937, no evidence was offered by either side. However, counsel for the Government moved to strike from the collector's letter of transmittal the following statement:

The Collector is of the opinion that Section 350 (a) of the Tariff Act of 1930 as amended provides for a reduction of 20% on the above merchandise when imported from Belgium.

The said motion was denied, the court stating that although the collector's letter was timely and therefore in evidence, no consideration would be given to any conclusion of law expressed therein, but only to statements of fact.

The issue presented is entirely one of law, to wit: Is the plaintiff entitled to a reduction of 20 per centum from the duty assessed by the collector by virtue of said trade agreement with Cuba of August 24, 1934, *supra*, and the Reciprocal Trade Agreement Act of June 12, 1934, *supra*?

The particular portion of the Cuban trade agreement relied upon by the plaintiff is in the last part of article III thereof and reads as follows:

Every article the growth, produce, or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

The pertinent provisions of the Reciprocal Trade Agreement Act of June 12, 1934, *supra*, relied upon by the plaintiff, read:

Sec. 350 (a) * * * the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States * * * is authorized from time to time—

(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. *The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly:* * * *. [Italics ours.]

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries *other than Cuba*, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, *or to preclude giving effect to an exclusive agreement with Cuba* concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba: * * *. [Italics ours.]

Also, in their brief filed herein, counsel for the plaintiff cite the so-called most-favored-nation clause in a certain treaty between the United States and Germany proclaimed October 14, 1925, 44 U. S. Stat. at L. 2132.

We have carefully examined the trade agreement with Cuba upon which the plaintiff relies, and can find in the schedule of reduced duties therein no mention of hoop steel, or in fact of any article pro-

vided for in the metal schedule of the Tariff Act of 1930, or even of any metal article whatsoever. Neither is there any evidence in the record that hoop steel or other manufactures of steel are produced or manufactured in the Republic of Cuba. Inasmuch as the concluding paragraph of article III of said Cuban trade agreement provides only for a general 20 per centum reduction in duty on articles "the growth, produce, or manufacture of the Republic of Cuba," it is difficult to conceive how there can be any reduced duty of which the plaintiff may avail himself, even if the provisions of the Cuban trade agreement were applicable to articles imported from other countries.

But the question as to whether the provisions of the Cuban trade agreement of August 24, 1934, may apply to articles imported from other foreign countries has been finally adjudicated by this court and by the Court of Customs and Patent Appeals in the case of *F. H. Von Damm* v. *United States*, 25 C. C. P. A. 97, T. D. 49094. The question there involved was whether corn from Argentina was entitled to the preferential reduction of 20 per centum specifically set forth in schedule II of said Cuban trade agreement.

In affirming the decision of the Third Division of this court (T. D. 48485, 70 Treas. Dec. 214) adverse to the claim of the importers, the appellate court said:

The next question for consideration is whether the rate of 10 cents per bushel upon corn provided for in the Cuban agreement should be held to be a preferential rate of duty exclusive to Cuba.

It will be observed, first, that the preamble to said agreement, hereinbefore quoted, relates only to "reciprocal preferential treatment" and modification of the Commercial Reciprocity Treaty of 1902, the language being:

The President of the United States of America and the President of the Republic of Cuba, desirous of strengthening the traditional bonds of friendship and commerce between their respective countries *by maintaining as the basis for their commercial relations the granting of reciprocal preferential treatment, in continuation of the policy adopted in the Convention of Commercial Reciprocity of 1902 between the two countries,* and taking into consideration that changed conditions *have rendered it necessary to modify the provisions of that Convention,* have arrived at the following Agreement: [Italics ours.]

Here there is no hint or intimation that any specific rates of duty fixed in the agreement should be other than preferential to Cuba and the United States.

We next come to article III of the Cuban agreement, hereinbefore quoted. It recites that articles the growth, produce, or manufacture of Cuba enumerated in schedule II, attached and made a part of the agreement, shall, on their importation into the United States,

be granted exclusive and preferential reductions in duties *not less* than the percentages specified respectively in Column 1 of the said Schedule. [Italics ours.]

\*          \*          \*          \*          \*          \*          \*·

In the case of every article named in schedule II of the Cuban agreement, the maximum rate named was less than the general tariff rates existing at that time, and remained preferential until some reciprocal trade agreement was made with some other country lowering the existing tariff rates to a point where the maximum rates named in the Cuban agreement would either cease to be preferential

or be less preferential than the percentage rate of reduction provided for in the first column of schedule II.

It seems to us that the Cuban agreement embodies a practicable plan for exclusive preferential duties on Cuban products, both by naming specific preferential duties and by preferential reduction percentages, and is clearly within the authority conferred upon the President by the Reciprocal Tariff Act.

It will be seen that the appellate court squarely held, as did the Third Division of this court, that no other country was entitled to any of the benefits and reductions given to Cuba in the said Cuban agreement.

A petition for a writ of certiorari to review the decision of the Court of Customs and Patent Appeals was then presented by the importers to the Supreme Court of the United States. The question was again fully briefed by both parties and on October 11, 1937, the Supreme Court denied the petition without opinion.

Since the above decision several other cases in which the rates of duty under the Cuban trade agreement were claimed to be applicable to imports from other countries have been decided against the importers. *C. W. Hunter* v. *United States,* Abstract 34770, 70 Treas. Dec. 1109 (appeal No. 4056, dismissed December 6, 1937); and *E. & J. Burke, Ltd.* v. *United States,* T. D. 49359, decided by the Third Division January 17, 1938.

But even if the above decisions had not been rendered, and the plaintiff could avail himself of the 20 per centum exclusive preferential reduction granted to Cuba; and even if the hoop steel were produced and manufactured in Cuba and were mentioned in the Cuban trade agreement (neither of which facts is true), the plaintiff herein would still be barred by virtue of the fact that the merchandise herein was actually imported from Germany and arrived in the United States on October 25, 1935. Such conclusion would be inevitable in view of the proviso in section 350 (a) of the Reciprocal Trade Agreement Act of June 12, 1934, which reads (48 U. S. Stat. at L. 943):

\* \* \* *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

Pursuant to the authority conferred upon him by said proviso, the President, in a letter addressed to the Secretary of the Treasury dated October 7, 1935, promulgated in T. D. 47898, 68 Treas. Dec. 307, stated as follows:

3. Because I find as a fact that the treatment of American commerce by Germany is discriminatory, I direct that the proclaimed duties shall be applied to products of Germany from the effective dates of such duties only until October

15, 1935, on which date the United States will have ceased to be bound by provisions of a treaty with Germany providing for most-favored-nation treatment in respect of customs duties.

It is obvious that the date of the present importation, October 25, 1935, is subsequent to the date of said Presidential proclamation suspending the application of the so-called "generalization clause" of said Reciprocal Trade Agreement Act of June 12, 1934, with respect to Germany. Hence, no reduction granted to any nation, including Cuba, could possibly apply to the instant merchandise.

Despite this, counsel for the plaintiff in their brief contend that the plaintiff is entitled to the 20 per centum reduction in duties provided for in the Cuban trade agreement by virtue of the treaty between the United States and Germany, dated December 8, 1923, proclaimed October 14, 1925, which contained the usual most-favored-nation clause. But unfortunately such treaty with Germany was no longer in existence at the time of the present importation. To be sure, article XXXI thereof provided that the treaty should remain in force for ten years, and that either party could notify the other of its intention to terminate the same at the expiration of said period. Under the latter provision, the President, on September 15, 1935, addressed a letter to the Secretary of the Treasury, which was promulgated in T. D. 47865, 68 Treas. Dec. 247–248, which reads:

My dear Mr. Secretary:

With reference to my letter addressed to you on July 8, 1935, and in particular to Section two of that letter concerning the application of duties proclaimed in the trade agreements with the Belgo-Luxemburg Economic Union, Haiti and Sweden, you are hereby notified that on October 15, 1935, the United States will cease to be bound by the provisions of Article VII of the Treaty of Friendship, Commerce, and Consular Rights between Germany and the United States, signed December 8, 1923, providing for most-favored-nation treatment in respect of customs duties.

You will please cause this notification to be published in an early issue of the weekly TREASURY DECISIONS.

Sincerely yours,

FRANKLIN D. ROOSEVELT.

The Honorable
HENRY MORGENTHAU, Jr.,
*Secretary of the Treasury.*

In addition to said letter, a written agreement was entered into between the United States and Germany, dated and signed June 3, 1935, ratification advised by the Senate August 24, 1935, ratified by the President August 28, 1935, ratified by Germany September 28, 1935, ratifications being exchanged at Berlin October 7, 1935 (49 U. S. Stat. at L., part II, page 3258). The said agreement provides that the 2nd, 3rd, 4th, 6th, and 7th paragraphs of article VII of the Germany treaty, signed December 8, 1923, containing the most-

favored-nation clause shall cease to have force and effect on October 14, 1935.

For the reasons thus set forth we see no merit in the contentions of the plaintiff. All claims are therefore overruled and judgment will be rendered accordingly.